**No. 21-50607**

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**
*Plaintiff-Appellee*

**v.**

**THOMAS ALAN ARTHUR,**
*Defendant-Appellant*

---

Appeal from the United States District Court
for the Western District of Texas – Pecos Division

---

# BRIEF OF APPELLANT

---

**LANE A. HAYGOOD**
Texas State Bar Number:  24066670
3800 E. 42nd Street, Suite 110
Odessa, Texas 79762
Tel:    432.803.5800
Fax:    432.225.1062
*Attorney   for   the   Defendant-Appellant,
Thomas Alan Arthur*

**ORAL ARGUMENT REQUESTED**

# CERTIFICATE OF INTERESTED PERSONS

**UNITED STATES OF AMERICA,**
> Plaintiff-Appellee

v.                                                            No.  4:19-cr-00774-DC

**Thomas Alan Arthur,**
> Defendant-Appellant

Counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  United States of America

2.  Thomas Alan Arthur

/s/ Lane Andrew Haygood

**LANE A. HAYGOOD**
3800 E. 42nd Street, Suite 110
Odessa, Texas  79762
Tel:   432.803.5800
Fax:   432.225.1062
Attorney for Thomas Alan Arthur

## STATEMENT REGARDING ORAL ARGUMENT

The Defendant-Appellant, Thomas Alan Arthur, believes that oral argument will assist the Court in determining the issues in this case regarding the obscenity of the charged stories and images. These are important, fact-sensitive determinations and a frank discussion with counsel will assist the Court in making important decisions that affect our most fundamental rights.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**......................................I

**STATEMENT REGARDING ORAL ARGUMENT**.............................II

**TABLE OF CONTENTS** ..........................................................III

**TABLE OF AUTHORITIES**.................................................... VIII

**STATEMENT OF JURISDICTION** .............................................. 1

**STATEMENT OF THE ISSUES**

> **ISSUE ONE:**   The trial court erred in denying defense counsel copies of the charged stories and images; as these images were not otherwise forbidden as child pornography or contraband subject to special handling, the denial of the defense's ability to provide them to experts hampered the defense search for experts, ultimately leading to a lack of expert testimony for Mr. Arthur.

> **ISSUE TWO:**   The trial court improperly excluded the expert testimony of Dr. David Ley regarding the potential artistic, scientific, literary, or other value of the challenged works, as well as Dr. Ley's ability to testify to other similar works or exemplars that could have assisted the jury in understanding how to correctly apply the reasonable person standard for value.

**ISSUE THREE:** The three challenged images in Counts I, VIII, and IX are not "obscene" nor do they depict "minors" within the meaning of the statute. As such, the statutes at issue are unconstitutional as-applied to Mr. Arthur because the statute requires proof of an impossible fact when the person depicted is wholly fictitious.

**ISSUE FOUR:** The five challenged stories in Counts II, III, IV, V, and VI, plus the additional stories found by the jury to be obscene though uncharged in the indictment, are not obscene, and the statute at issue is unconstitutional as applied to Mr. Arthur.

**ISSUE FIVE:** The trial court improperly refused Mr. Arthur's requested jury instruction. The instruction given constitutes impermissible burden shifting by relieving the Government of the burden to prove that the material at issue, applying a reasonable person standard, lacks objective scientific, literary, or artistic value. As the charge read given to the jury, it implied that Mr. Arthur had to show a lack of such value.

**ISSUE SIX:** The trial court committed sentencing error when it included, in relevant conduct, uncharged and unproven assertions from persons who were not called as witnesses and who Mr. Arthur was unable to confront or challenge. Although this relevant conduct did not affect the final Guidelines calculation, the trial court's decision to "stack" the sentences against Mr. Arthur for Counts I, II, III, IV, V, and VI, is evidence that the trial court was prejudiced by these assertions, and thus Mr. Arthur's sentence violates substantive due process.

**STATEMENT OF THE CASE** ....................................................... **4**

Course of Proceedings and Disposition in the Court Below ................................. 4

General Statement of Facts ............................................................ 5

**SUMMARY OF THE ARGUMENT** ............................................... **6**

**ISSUES AND AUTHORITIES** ..................................................... **9**

1.      The Federal Rules of Criminal Procedure generally favor the defendant's right to copy all materials unless specifically excluded by rule or statute.12

  1.1.   The statute at issue does not exclude "virtual" images such as the ones at issue or any sort of textual matter. ................................................... 13

  1.2.   The inability to expeditiously provide such material to defense experts hampered Mr. Arthur's right to present a full and complete defense, particularly given the later exclusion of his sole proffered expert. ......... 15

2.      Dr. Ley's testimony was necessary to speak to the third prong of the *Miller* test. ..................................................................................... 20

  2.1.   The third prong of *Miller* is an objective inquiry, but the Government and the district court treated it as a subjective inquiry. .............................. 21

  2.2.   Dr. Ley's qualifications were beyond question; the district court misapplied the qualification provision by being hyper-specific and requiring a granularity in qualification not found in the applicable caselaw. .................................................................................. 23

  2.3.   Dr. Ley's methodology is generally accepted and well within the limits of normal science; the district court was wrong to reject it based on the district court's subjective disagreement with the conclusion. ................ 25

  2.4.   Although the district court did not address the "fit" between Dr. Ley's proffered testimony and the question before the jury, this Court should do so to see the importance of Dr. Ley's testimony to the defense. ........... 30

3.       The depictions at issue do not depict real people, let alone "minors." ... 35

3.1.    18 U.S.C. § 1466A does require depiction of "a minor." .................... 37

3.2.    Criminalizing depictions of fictitious characters of indeterminate age sweeps too broadly and acts as an end-run around the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*. Obscenity laws are not a catch-all now that prosecutors are prohibited from bringing virtual child pornography charges. ..................................................................... 38

4.       The history of the prosecution of text-only obscenity is long and trends toward permissiveness rather than puritanism. .................................. 42

4.1.    There are qualitative differences between writing about an offensive or prurient subject and depicting it visually. .......................................... 45

4.2.    The determination of obscenity is not one of relative quality; to permit some depictions of child sexual abuse as celebrated literature but to penalize and imprison others such as Mr. Arthur for them is inconsistent and flies in the face of due process and equal justice........................... 47

5.       The prongs of the *Miller* test are distinct; so too must the jury instructions applying that test be distinct. .......................................................... 51

5.1.    The first requested instruction separates the first and second prongs of the *Miller* test and avoids confusion. ................................................... 52

5.2.    The second requested instruction is necessary because the wording used by the district court constitutes impermissible burden-shifting to the defendant. ................................................................................. 53

6.       Sec. 3553(a) is not carte blanche to consider anything placed in the PSR by the government; the district court must find indicia of reliability for every allegation. .......................................................................... 58

6.1.    The PSR in this case contained numerous examples of extraneous offenses allegedly told to the government by anonymous witnesses describe decades-old conduct which did not result in criminal charges. .............. 59

6.2.    Neither the government nor the district court ever identified what indicia of reliability were present in these wild allegations. ........................... 60

**CONCLUSION**..................................................................... **62**

**CERTIFICATE OF SERVICE**.................................................. **63**

**CERTIFICATE OF COMPLIANCE**............................................ **64**

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Ashcroft v. Free Speech Coalition*,
  535 U.S. 234 (2002) ............................................................24, 55, 58

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................... passim

*Francis v. Franklin*,
  471 U.S. 307 (1985) ................................................................. 63

*Gall v. United States*,
  552 U.S. 38 (2007) .............................................................65, 71

*Hamling v. United States*,
  418 U.S. 87 (1974) ................................................................. 27

*Jenkins v. Georgia*,
  418 U.S. 153 (1974) ................................................................ 61

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952) ................................................................ 56

*Kaplan v. California*,
  413 U.S. 115 (1973) ............................................................. passim

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) .............................................................27, 35

*Paris Adult Theater I v. Slaton*,
  413 U.S. 49 (1973) .............................................................27, 31

*People v. Illinois*,
  481 U.S. 497 (1987) ................................................................ 30

*Reno v. Am. Civ. Liberties Union,*
  521 U.S. 844 (1997) ................................................................. 30

*Roth v. United States,*
  354 U.S. 476 (1957) ................................................................. 58

*Sandstrom v. Montana,*
  442 U.S. 510 (1979) ................................................................. 63

*Smith v. California,*
  361 U.S. 147 (1959) ....................................................... 30, 31, 32

*Stanley v. Georgia,*
  394 U.S. 557 (1969) ................................................................. 56

*United States v. Playboy Entertainment Group,*
  529 U.S. 803 (2000) ................................................................. 44

*United States v. Stevens,*
  559 U.S. 460 (2010) ................................................................. 64

*Washington State Grange v. Washington State Republican Party,*
  552 U.S. 442 (2008) ................................................................. 45

## United States Courts of Appeals Cases

*Anderson v. United States,*
  388 Fed.Appx. 406 (5th Cir. 2010) ........................................... 31

*Besig v. United States,*
  208 F.2d 142 (9th Cir. 1953) .................................................... 41

*Citizens United v. Federal Election Com'n,*
  558 U.S. 310 (2010) ................................................................. 44

*EEOC v. Manville Sales Corp.,*
  27 F.3d 1089 (5th Cir. 1994) .................................................... 59

*Eiland v. Westinghouse Electric,*
58 F.3d 176 (5th Cir. 1995) ........................................................ 26

*Food Lion, Inc. v. United Food & Comm. Workers Int'l Union, AFL-CIO-CLC,*
103 F.3d 1007 (D.C. Cir. 1997) ................................................... 18

*In re First City Bancorporation of Texas, Inc.,*
282 F.3d 864 (5th Cir. 2002) ...................................................... 18

*Miller v. California,*
413 U.S. 15 (1973) ............................................................. passim

*United States v. Berry,*
553 F.3d 273 (3d Cir. 2009) .................................................67, 68

*United States v. Bowersox,*
72 M.J. 71 (Armed Forces App. 2013) .........................46, 48, 49, 50

*United States v. Cavera,*
550 F.3d 180 (2d Cir. 2008) ...................................................... 64

*United States v. Elwood,*
999 F.2d 814 (5th Cir. 1993) ...................................................... 68

*United States v. Harris,*
702 F.3d 226 (5th Cir. 2012) ................................................ 68, 69

*United States v. Hicks,*
980 F.2d 963 (5th Cir. 1992) ...................................................... 44

*United States v. Huerta,*
182 F.2d 361 (5th Cir. 1999) ...................................................... 68

*United States v. Kelly,*
314 F.3d 908 (7th Cir. 2003) ...................................................... 23

*United States v. Ragsdale,*
426 F.3d 765 (5th Cir. 2005) ...................................................... 31

*United States v. Rigas,*
   490 F.3d 208 (2d Cir. 2007) ...................................................... 64

*United States v. Schales,*
   546 F.3d 965 (9th Cir. 2008) .............................................. 45, 46

*United States v. Underwood,*
   194 Fed.Appx. 215 (5th Cir. 2006) ........................................... 68

*United States v. Whorley,*
   550 F.3d 326 (4th Cir. 2008) ............................................ passim

*United States v. Williams,*
   444 F.3d 1286 (11th Cir. 2006) ................................................ 54

*Valley Reg'l Med. Ctr. v. Wright,*
   61 Fed.Appx. 121 (5th Cir. 2003) .............................................. 18

*Waco International Inc. v. KHK Scaffolding Houston Inc.,*
   278 F.3d 523 (5th Cir. 2002) .................................................... 59

## United States Sentencing Guidelines

United States Sentencing Guidelines § 1B1.3 ................................... 66

## United States District Court Cases

*United States v. Bennett,*
   24 F.Cas. 1093 (C.C.S.D.N.Y. 1879) .......................................... 52

*United States v. Eychaner,*
   326 F.Supp.3d 76 (E.D. VA 2018) ......................................... 46, 48

*United States v. Handley,*
   564 F.Supp.2d 996 (S.D. Iowa 2008) ......................................... 44

*United States v. Kennerly,*
   209 F. 119 (S.D.N.Y. 1913) ...................................................... 52

## State Court Cases

*Commonwealth v. Delacey*,
    171 N.E. 455 (Mass. 1930) ........................................................... 41

*Hood v. Phillips*,
    554 S.W.2d 160 (Tex. 1977) ....................................................... 31

## Statutes

18 U.S.C. § 1462 ..................................................................... passim

18 U.S.C. § 1466A ................................................................... passim

18 U.S.C. § 2256 ................................................................... 19, 22

18 U.S.C. § 3509 ............................................................... 21, 22, 23

18 U.S.C. § 3553(a) ................................................................ passim

## Other Authorities

*Queen v. Hicklin*, 3 L.R.-Q.B. 360 (1868) ........................................ 52

## Rules

Federal Rule of Criminal Procedure 16 .................................... 19, 20, 21

Federal Rule of Evidence 702 .................................................... 26, 34

## Treatises

Frederick Schauer, *The Law of Obscenity* (1976) ................................ 52

# STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal under 28 U.S.C. 1291 and 18 U.S.C. 3742(a).

# STATEMENT OF THE ISSUES

**ISSUE ONE:**   The trial court erred in denying defense counsel copies of the charged stories and images; as these images were not otherwise forbidden as child pornography or contraband subject to special handling, the denial of the defense's ability to provide them to experts hampered the defense search for experts, ultimately leading to a lack of expert testimony for Mr. Arthur.

**ISSUE TWO:**   The trial court improperly excluded the expert testimony of Dr. David Ley regarding the potential artistic, scientific, literary, or other value of the challenged works, as well as Dr. Ley's ability to testify to other similar works or exemplars that could have assisted the jury in understanding how to correctly apply the reasonable person standard for value.

**ISSUE THREE:**   The three challenged images in Counts I, VIII, and IX are not "obscene" by the relevant definition; nor did the Government prove that they depicted "minors" within the meaning of the statute. As such, the statutes at issue are unconstitutional as-applied to Mr. Arthur because the statute requires proof of an impossible fact when the person depicted is wholly fictitious.

**ISSUE FOUR:**   The five challenged stories in Counts II, III, IV, V, and VI, plus the additional stories found by the jury to be obscene though uncharged in the indictment, are not obscene, and the statute at issue is unconstitutional as applied to Mr. Arthur.

**ISSUE FIVE:** The trial court improperly refused Mr. Arthur's requested jury instruction. The instruction given constitutes impermissible burden shifting by relieving the Government of the burden to prove that the material at issue, applying a reasonable person standard, lacks objective scientific, literary, artistic, or other value. As the charge read given to the jury, it implied that Mr. Arthur had to show a lack of such value.

**ISSUE SIX:** The trial court committed sentencing error when it included, in relevant conduct, uncharged and unproven assertions from persons who were not called as witnesses and who Mr. Arthur was unable to confront or challenge. Although this relevant conduct did not affect the final Guidelines calculation, the trial court's decision to "stack" the sentences against Mr. Arthur for Counts I, II, III, IV, V, and VI, is evidence that the trial court was prejudiced by these assertions, and thus Mr. Arthur's sentence violates substantive due process.

# STATEMENT OF THE CASE

## Course of Proceedings and Disposition in the Court Below

The United States Government charged Thomas Alan Arthur, Defendant-Appellant, with nine counts related to the operation of an erotic stories website: Count I – distribution of an obscene drawing; Count II – distribution of an obscene story; Count III – distribution of an obscene story; Count IV – distribution of an obscene story; Count V – distribution of an obscene story; Count VI – distribution of an obscene story; Count VII – trafficking in obscene materials; Count VII – distribution of an obscene drawing; and Count IX – distribution of an obscene drawing; as well as civil forfeiture allegations.[1] Mr. Arthur pleaded not guilty to all nine counts of the indictment, though he did stipulate to certain factual matters regarding the charges.[2] Mr. Arthur proceeded to a jury trial on the remaining issues, after which the jury found him guilty on all nine counts.[3]

---

[1] ROA.192-98.

[2] ROA.310-16.

[3] ROA.533-55.

## General Statement of Facts

The operative facts of this case are not in dispute. Thomas Alan Arthur was the administrator and owner of a website known as "mrdouble.com," which featured erotic stories, some of which that depicted fictitious minors engaged in sexually explicit conduct.[4] Authors to this site were permitted a small "author photograph," three of which were charged as obscene even though they were artistic renderings—not photographs—and did not depict any actual minors (or, as Mr. Arthur contended, minors in general).[5]

The facts not being in dispute, the only issues that remain are ones of legal operation: are the materials challenged by the government **actually** obscene by the relevant definitions? Did the trial court deprive Mr. Arthur of his Sixth Amendment right to a complete defense through is evidentiary rulings? And did the trial court commit charge and sentencing error? The answers to these questions determine the resolution of this case, not the general facts of the case.

---

[4] ROA.310-14.

[5] ROA.1152-53; ROA.587-590.

# SUMMARY OF THE ARGUMENT

**ISSUE ONE:**    By not allowing Mr. Arthur's counsel to copy the challenged stories and drawings, the trial court effectively limited Mr. Arthur's ability to seek expert help in presenting his case by dramatically increasing the burden and expense on Mr. Arthur during a nationwide pandemic and a time in which Mr. Arthur was incarcerated and unable to raise additional funds.

**ISSUE TWO:**    The district court improperly excluded the testimony of Mr. Arthur's sole expert witness based on a subjective disagreement with Dr. Ley's conclusions rather than an appropriate consideration of the *Daubert* standards for qualification and reliability. Further, the district court did not conduct an analysis of the "fit" of Dr. Ley's testimony to the appropriate jury questions, and had it done so, the district court would have concluded that Dr. Ley's testimony was essential for the jury's resolution of the third, objective prong of the *Miller* test.

**ISSUE THREE:**    The three challenged images do not depict **actual** minors, and as such, any attempt to criminalize such depictions fails an as-applied challenge to the constitutionality of the statute. Obscenity laws are not available as an end-run around Supreme Court decisions limiting prosecutor's ability to bring charges against so-called "virtual" child pornography, as was the case with the prosecution of Mr. Arthur.

**ISSUE FOUR:**    The five challenged stories, plus the additional stories found by the jury in Count VII, are not obscene under the relevant objective consideration from the *Miller* test. As-applied to Mr. Arthur, none of the stories can be said to lack appropriate *Miller* value because, as "text-only" obscenity, they are no different from other forms of challenged texts which have been upheld by various courts against obscenity challenges. Contemporary community standards apply only to the first two prongs of the *Miller* test; the third, objective prong establishes a baseline of protection under the First Amendment that does not depend on the whims or peculiarities of a particular community or set of standards.

**ISSUE FIVE:**     The district court's jury charge creates confusion regarding the first two prongs of the *Miller* test and improperly shifts the burden on the third prong of the *Miller* test to the defendant. Because of this, it is a constitutionally-impermissible jury charge requiring reversal.


**ISSUE SIX:**     At sentencing, the district court considered certain uncharged, extraneous bad acts or offenses allegedly committed by Mr. Arthur and as related to the United States Probation Office by anonymous actors describing, in many cases, decades-old conduct, as factors under 18 U.S.C. § 3553(a) that, while not affecting the Guidelines calculation, were nevertheless procedurally improper because they were not accompanied by sufficient indicia of reliability or indeed anything more than the say-so of the anonymous sources. To place the burden on Mr. Arthur to refute such charges sets up an impossible standard no defendant could meet and deprives defendants of due process of law.

# ISSUES AND AUTHORITIES

**ISSUE ONE:**      Denial of Copying the Indicted Exhibits

When a trial court denies requested discovery, the standard is one of abuse of discretion.[6] Trial courts exercise considerable discretion in handling discovery matters, and a district court's discretion to permit or deny discovery is reviewed for abuse of discretion.[7] Abuse of discretion occurs when a ruling is based on an erroneous view of the law or a clearly erroneous view of the evidence.[8]

## ISSUE ONE

## STATEMENT OF FACTS REGARDING ISSUE ONE

The magistrate judge in this case, the Hon. David B. Fannin, held a discovery motion hearing on April 23, 2020, via teleconference.[9] There, Mr. Arthur argued that his counsel should be given copies of the stories charged in

---

[6] *See Valley Reg'l Med. Ctr. v. Wright*, No.  02-40144, 61 Fed.Appx. 121 at *2 (5th Cir. 2003) (per curiam).

[7] *See Food Lion, Inc. v. United Food & Comm. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

[8] *In re First City Bancorporation of Texas, Inc.*, 282 F.3d 864, 867 (5th Cir. 2002).

[9] ROA.808.

---

Counts II through VI so as to enable them to present them to expert witnesses for review to determine if these stories possessed any artistic, literary, or scientific merit.[10] Mr. Arthur further argued that the three drawings charged in Counts I, VIII, and IX should be produced as they were not a "visual depiction" as defined by 18 U.S.C. § 2256(5).[11]

While Rule 16 of the Federal Rules of Criminal Procedure specifically excepts "child pornography" from being produced, none of the charged articles (be they stories or drawings) are covered by the exception to Rule 16's general rule that such materials be produced.[12]

The Government, at the hearing, did not dispute that the visual depiction at issue in Count I was a "drawing," merely with defense counsel's characterization of the drawing as a "cartoon."[13] The government argued that these materials were "contraband," but "contraband" is not the appropriate standard as found in Rule

---

[10] ROA.810; ROA.104-05.

[11] ROA.105.

[12] ROA.106.

[13] ROA.813.

16 or any other rule governing criminal discovery in the United States or the Fifth Circuit.[14] The Government further confused the issue at the hearing by arguing, without bringing in witnesses to substantiate the point, that there were communications between Mr. Arthur and other persons through the website who had "convictions for child pornography, child sexual abuse."[15] The magistrate judge denied the defendant's motion for discovery, but made the material available for defense experts to view at the FBI office in Midland, Texas (despite the fact that the defense's consulting expert at the time was out of Austin, Texas, and in the middle of a pandemic which limited travel).[16] Mr. Arthur sought reconsideration by the district court.[17] The district court affirmed the magistrate judge's decision, finding that although the material was not squarely within the definition of "visual depiction" under the statute, the district court would err to the side of caution, and that making the material available in Midland, Texas, did

---

[14] ROA.813-14.

[15] ROA.816.

[16] ROA.820.

[17] ROA.153-155.

no unduly burden the defense, as would making the material available only at the Alpine, Texas, FBI office.[18]

## ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE ONE

### 1. The Federal Rules of Criminal Procedure generally favor the defendant's right to copy all materials unless specifically excluded by rule or statute.

The Federal Rules of Criminal Procedure generally requires the Government to permit the copying of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of those items."[19] By statute, certain materials are excepted from this requirement.[20] Under 18 U.S.C. § 3509(m), any material defined as "child pornography" by the Code is prohibited from duplication, photographing, or otherwise reproducing the material.[21] Child pornography is defined as any visual depiction, including a photography, film, video, picture, computer or computer-generated image or picture, whether made or

---

[18] ROA. 150-51.

[19] Fed. R. Crim. Proc. 16(a)(1)(E).

[20] *See* 18 U.S.C. § 3509(m)(2)(A).

[21] *Id.* at § 3509(m)(1).

produced by electronic, mechanical, or other means, of sexually explicit conduct, where—(a) the production of such visual decision involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.[22] "Identifiable minor" means a person who was a minor at the time the depiction was created, adapted, or modified, or whose image as a minor was used in creating, adapting, or modifying the visual decision, and who is recognizable as an actual person by their likeness.[23]

### 1.1. The statute at issue does not exclude "virtual" images such as the ones at issue or any sort of textual matter.

No one contends that the three drawings at issue (Counts I, VIII, and IX) depicted any actual persons, let alone actual minors. Therefore, they do not fall within the exception provided by Sec. 3509(m). Neither does Sec. 3509(m) contain

---

[22] 18 U.S.C. § 2256(8).

[23] 18 U.S.C. § 2256(9).

an exception for the text-only stories. Nor does the district court's written decision affirming the magistrate's decision contain any separate discussion of how Sec. 3509 or some other authority might apply to the text-only stories at issue in Counts II through VI.

Thus, the only question for this Court is whether the district court was correct to err to the side of caution (because err it did) in finding that the "visual depictions" at issue could fall within the definition of Sec. 3509(m). In *Ashcroft v. Free Speech Coalition*, the United States Supreme Court specifically held that the definition of child pornography does not include "virtual" material, that is, material which does not feature actual minors or where actual minors were not used to produce the material.[24] Therefore, although the district court was within its right to impose a protective order on the images or to limit defense counsel's disclosure of the images to retained experts only in a fashion that would permit defense counsel to remain in control of the images, it was error for the trial court to deny defense counsel the ability to expeditiously provide those images to experts to

---

[24] 535 U.S. 234, 250-51 (2002); *see also United States v. Kelly*, 314 F.3d 908, 909-10 (7th Cir. 2003).

assist Mr. Arthur in preparing for and making his defense. This is a clearly erroneous view of the law that rises to the level of an abuse of discretion.

**1.2.    The inability to expeditiously provide such material to defense experts hampered Mr. Arthur's right to present a full and complete defense, particularly given the later exclusion of his sole proffered expert.**

The question for this Court is then how the failure to make such material available in discovery harmed Mr. Arthur, particularly after Mr. Arthur was able to secure the services of an expert to travel from Austin, Texas, to Midland, Texas, to view the challenged material and submit a report to counsel. The answer is that this imposed a significant financial burden on an incarcerated defendant who lacked unlimited funds to retain experts to assist in the preparation of defense. Had these materials been permitted to be copied and provided to experts without the experts having to travel from far-away locales to the more remote parts of the Western Division of Texas, counsel could have sought more assistance from consulting experts or from different types of experts. As it was, defense counsel's limited funds were required to pay for the experts that were retained, and each expert had to make special trips to the West Texas region to view the material and formulate his or her opinions regarding the material. As will be seen by the Court in Issue Two, this limitation prejudiced the defendant when his one and only testifying

expert witness was unfairly and improperly struck from testifying by the district court.

This being an abuse of the trial court's discretion which impacted Mr. Arthur's right to present a full and complete defense, the remedy is for this Court to reverse and remand for a new trial.

## ISSUE TWO

**ISSUE TWO:**    EXCLUSION OF DEFENSE EXPERT DR. DAVID LEY

Federal Rule of Evidence 702 permits the use of expert testimony if the testimony would assist the jury to understand the evidence or determine a fact in issue.[25] And while expert testimony is not necessary to enable the jury to judge the obscenity of material placed into evidence,[26] neither is the jury prohibited from hearing such testimony when appropriate.[27] The objective of the district court's gatekeeping function under *Daubert* to make certain than an expert employs I the courtroom "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[28] A district court's decision will therefore not be disturbed on appeal unless it is "manifestly erroneous."[29] The Rule 702 inquiry is a flexible one with the overarching goal of ensuring expert testimony has scientific

---

[25] Fed. R. Evid. 702.

[26] *See Paris Adult Theater I v. Slaton,* 413 U.S. 49 (1973).

[27] *See Hamling v. United States,* 418 U.S. 87, 100 (1974).

[28] *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999), *citing Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

[29] *See Eiland v. Westinghouse Electric,* 58 F.3d 176, 180 (5th Cir. 1995).

validity, and thus, evidentiary relevance and reliability, with a focus on the principles and methodology, not the conclusions generated.[30]

## STATEMENT OF FACTS REGARDING ISSUE TWO

The Government filed a motion to exclude the testimony of Dr. David Ley, Mr. Arthur's proposed expert on the potential redeeming value of allegedly obscene work.[31] The trial court conducted a lengthy *Daubert* hearing prior to examining the venire panel.[32] After the conclusion of the hearing, the trial court excluded Dr. Ley's testimony in its entirety, with the trial court stating that it did not find Dr. Ley's opinion "effective or compelling."[33] In short, the trial court found that the jury could determine whether the challenged material possessed the requisite value based on the evidence alone, and found that Dr. Ley's methodology was "unreliable" and that there was a risk of "unfair prejudice" and "confusion of

---

[30] *Daubert*, 509 U.S. at 593-94.

[31] ROA.209-215.

[32] *See* ROA.4-89.

[33] ROA.908.

the issues."[34] Following trial, the district court submitted a written order supplementing and correcting the verbal order.[35] Within that, the district court argued that Dr. Ley did not possess the requisite qualification sin "art, literature, or politics" to determine whether these items had value within those fields.[36] The trial court also disputed Dr. Ley's scientific background and his ability to offer any insight into the scientific value of the challenged material.[37] Finally, the trial court held that Mr. Arthur failed to establish "reliability" of Dr. Ley's opinions regarding the literary value of the challenged works because his use of similar works in his treatment of sexually deviant persons did not focus on their value "outside treatment."[38] Because the trial court misapplied the appropriate standard and effectively gutted Mr. Arthur's presentation of his defense, reversal is required as shown below.

---

[34] ROA.908-09.

[35] ROA.597-605.

[36] ROA.601.

[37] ROA.601-02.

[38] ROA.603.

ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE TWO

**2. Dr. Ley's testimony was necessary to speak to the third prong of the *Miller* test.**

The third prong of the *Miller* test for obscenity—whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value—is not based on community standards, but rather an objective or reasonable person test.[39] This element allows appellate courts to impose some limitations and regularity on the definition by setting, as matter of law, a national floor on socially redeeming value.[40] This renders this prong of the *Miller* test a fit topic for expert testimony.[41] Justice Frankfurter, writing in concurrence in *Smith*, stated that to exclude expert testimony is to "exclude as irrelevant evidence that goes to the very essence of the defense" and therefore to constitutional due process itself.[42]

Literary, artistic, or scientific value is not a matter of common knowledge;

---

[39] *People v. Illinois*, 481 U.S. 497, 500 (1987), *citing Miller v. California*, 413 U.S. 15 (1973).

[40] *Reno v. Am. Civ. Liberties Union*, 521 U.S. 844, 873 (1997).

[41] *See Kaplan v. California*, 413 U.S. 115, 121 (1973) ("The defense should be free to introduce appropriate expert testimony…"); *Smith v. California*, 361 U.S. 147, 164-65 (1959) (Frankfurter, J., *concurring*).

[42] *Smith*, 361 U.S. at 165.

due process required that Mr. Arthur be permitted to offer expert testimony on this area to assist the jury in making an *objective* determination.

The district court relied principally upon the Supreme Court's decision in *Paris Adult Theaters* to arrive at its conclusion, quoting such strong language as the "the material itself is the best evidence of what [it] represents" and that experts have "often made a mockery out of the otherwise sound concept" of expert testimony in such cases.[43] The district court took exception with the qualifications, reliability, and "fit" of Dr. Ley's testimony to the evidence proffered.

### 2.1. The third prong of *Miller* is an objective inquiry, but the Government and the district court treated it as a subjective inquiry.

First, it must be remarked that there is a disconnect in the wording of *Paris Adult Theater I* with the Supreme Court's holdings in *Kaplan* and *Smith*, one that is readily resolved by reading to **which** parts of the *Miller* test the language is to apply.

Put succinctly, the strong language from *Paris* about the ability of juror's ability to recognize obscenity applies to the first two prongs relating to whether the material depicts, in a patently offensive manner, sexual conduct and whether the

---

[43] ROA.600, *quoting Paris Adult Theater I v. Slaton*, 413 U.S. at 56.

0

work, taken as a whole, appeals to prurient interests.[44] Given the obscene materials at issue in *Ragsdale* (videotapes depicting real or simulated rapes), this Court agreed with the Supreme Court that no such expert testimony was necessary to determine the "prurient appeal of the materials."[45]

*Kaplan* and *Smith*, however, speak to the **third** *Miller* prong, which is, as previously stated, an **objective** inquiry. This is no different than this Court requiring such expert testimony in a case of ordinary negligence to determine whether the standard of care was breached, as both are objective "reasonable person" type inquiries.[46]

Therefore, expert testimony is uniquely fit for the situation at hand, where Mr. Arthur stipulated that the material in question depicts, in a patently offensive manner, sexual conduct and appeals to a prurient interest in sex. The only question for the jury was whether the material lacked redeeming value, and this was the

---

[44] *See United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005).

[45] *Id*. at 774.

[46] *See Anderson v. United States*, 388 Fed.Appx. 406, 407 (5th Cir. 2010), *citing Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977).

proffered area of Dr. Ley's testimony that the trial court felt would not assist the trier of fact, despite Dr. Ley's obvious familiarity with the subject matter and the fact that such subject matter is generally far removed from the experience and knowledge of everyday jurors.

### 2.2. Dr. Ley's qualifications were beyond question; the district court misapplied the qualification provision by being hyper-specific and requiring a granularity in qualification not found in the applicable caselaw.

First, with regard to Dr. Ley's qualifications, the trial court noted that Dr. Ley is a PhD-holding clinical psychologist licensed in New Mexico and South Carolina who routinely treats patients as a certified sex therapist.[47] The trial court further noted that Dr. Ley is the author of three books on sexuality and does forensic work surrounding sexuality issues. Dr. Ley further testified (though this was not discussed by the district court) that he has been admitted as an expert in other trials, civil and criminal.[48] Dr. Ley further explained to the Court his methodological approach in this case and that the theories and principles applied by

---

[47] ROA.601.

[48] ROA.849.

him were generally accepted within his field as applicable to the material at hand.[49]

The district court, however, felt that this only discussed Dr. Ley's ability to discuss the potential value of the challenged stories or artwork in the field of science, and not "art, literature, or politics," since Dr. Ley does not have a degree in any of those fields.[50] The district court further found that Dr. Ley could not be an expert on the scientific value of the material charged in this case because he reviewed literature in the field of sex therapy, but then suggests that this literature is outside of Dr. Ley's field, although he is a sex therapist.[51]

In essence, the trial court set an impossible standard far in excess of *Daubert* and then determined that Dr. Ley did not reach this standard. The trial court stated that Dr. Ley, despite being able to testify about the use of pornographic writings and erotic drawings in the treatment of sexual deviancy, could not testify how "depictions of the sexual abuse of babies and/or children" fit the definition of "pornography" or "erotic drawings." But the trial court cited no authority for this

---

[49] ROA.849-50.

[50] ROA.601.

[51] ROA.601-02.

position, merely stated it as if this distinction were clearly enshrined in the law.

Fortunately, the *Daubert* standard is very familiar. The purpose of the *Daubert* qualifications analysis is to ensure that junk science is kept away from the jury.[52] Dr. Ley's testimony as a sex therapist, clinical psychologist, and author and historian of sexually charged materials provided him with knowledge and experience greater than that of the average juror, which is the requirement for qualification under FRE 702.[53] To hold that Dr. Ley is unable to speak to these matters because lacks a degree in such a pinpoint area as "literature" or "art" is a refusal to seriously engage with the appropriate standard; to say that Dr. Ley cannot speak to the use of such materials in sex therapy when he is a sex therapist borders on the inexplicable.

**2.3.   Dr. Ley's methodology is generally accepted and well within the limits of normal science; the district court was wrong to reject it based on the district court's subjective disagreement with the conclusion.**

Having determined that Dr. Ley is qualified to offer his opinion, the next step in the *Daubert* analysis would be to determine whether Dr. Ley's methodology

---

[52] *Kumho Tire*, 526 U.S. at 152-53.

[53] *See* Fed. R. Evid. 702.

is reliable. The inquiry is not a rigid one, but relies on the flexibility of the trial judge.[54] The factors that go into this determination include, but are not limited to, whether a theory has been tested or is generally accepted within the relevant field; whether the theory or technique has been subject to peer review or publication; a potential rate of error of the theory or technique; and the current status of the technique as "normal science" within the field.[55]

Dr. Ley testified that the theories and concepts to which he would be referring, about the place and fit of the use of erotic materials in treating sexual deviancy, were commonplace and that everything he would be testifying to would be part of accepted, peer-reviewed, common clinical psychological and sex therapeutic practice.[56]

The trial court, however, chose to focus on the fact that Dr. Ley was not primarily an author of literature or an artist in discussing the potential value of the

---

[54] *Daubert*, 509 U.S. at 592-93.

[55] *Daubert*, 509 U.S. at 593-94.

[56] ROA.850-51.

challenged works as artistic or literary endeavors.[57] Dr. Ley provided to the Court a copy of his proposed testimony and discussed what potential value the challenged works might have.[58] For example, with regard to the textual depiction charged in Count II of the indictment, Dr. Ley stated that stories such as this one may have scientific value in that they could decrease the risk of child abuse[59] or reveal to clinicians or treating doctors the "fantasies and desires of individuals with sadistic and pedophilic interests."[60] Similarly, Dr. Ley found that the story may help depict elements of psychological functioning, of value to social scientists and public policymakers, and noted the similarities of the story to the themes and depictions in Bret Easton Ellis's 1991 novel *American Psycho*, which also became a major motion picture, despite the fact that both novel and film contain graphic depictions of the murder of a child, as well as cannibalism, rape, torture, and necrophilia.[61]

---

[57] ROA.603-04.

[58] ROA.350-364.

[59] ROA.350.

[60] ROA.350.

[61] ROA.350.

Because the jury was not permitted to hear Dr. Ley's testimony on this subject, the jury did not get to hear about the comparison to *American Psycho*, which is a novel or movie that jurors may have had experience with. With Dr. Ley able to make the connection between the story and the novel/movie, a juror might have been persuaded that the challenged material, read in a broader social context, had value that was not immediately apparent to a layperson upon reading it in the courtroom with dozens of eyes upon them.

Dr. Ley's proposed testimony goes on at length for each of the charged stories, each of the charged drawings, as well as two uncharged stories alleged to have been authored by Mr. Arthur.[62] Dr. Ley concluded his proferred testimony with a lengthy discussion of appropriate scientific and psychological literature as well as published literary materials similar to the charged stories, e.g., the Marquis de Sade's *120 Days of Sodom*.[63] Because the value question is an **objective** one, Dr. Ley should have been permitted to testify that stories similar to those charged have been published and are widely available in libraries and used in educational courses

---

[62] ROA.351-56.

[63] ROA.357.

quite frequently. Doing so would have aided the jury in putting the works in a broader context than merely that of twelve ordinary citizens of the Pecos, Texas, area.

But to state that Dr. Ley's methodology or proposed conclusions are not reliable because he does not possess degrees in art, literature, politics, and other various sciences flies in the face not only of the *Daubert* standard but the trial court's earlier ruling regarding the material discussed in Issue One. Had Mr. Arthur been permitted to copy and provide the material to a wider variety of experts without incurring significant cost in travel for the experts, as well as their time and expertise, then perhaps Mr. Arthur could have sought the opinions of art professors, literature professors, political scientists, psychiatrists, and medical doctors. The district court cannot on one hand increase the burden on Mr. Arthur to obtain expert testimony then lament that Mr. Arthur was forced to choose an expert with a broad range of expertise who would tie in disparate threads to his own experience and practice. Again, this sets Mr. Arthur a Herculean task and then faults him for not being equal to a task only a demigod could accomplish.

**2.4. Although the district court did not address the "fit" between Dr. Ley's proffered testimony and the question before the jury, this Court should do so to see the importance of Dr. Ley's testimony to the defense.**

Finally, although the district court did not address it, this Court must address the "fit" between the proffered testimony and the question before the jury.[64] "Fit" is not always an obvious determination. For example, *Daubert* gives us the example of an astronomer testifying as to the phases of the moon: if the question for the jury is whether a witness could have observed what she claimed given the relative brightness of the phase of the moon on a given night, that testimony "fits" with the expertise of the astronomer.[65] If, on the other hand, the testimony is offered to prove that the defendant was acting erratically due to the influence of the full moon, such testimony would not "fit" the question because there must be a valid scientific connection to the pertinent inquiry.[66]

In this case, the pertinent inquiry was solely whether the stories and drawings at issue had *Miller*-type value. Dr. Ley's testimony as a clinical

---

[64] *Daubert,* 509 U.S. 591.

[65] *Id.*

[66] *Id.*

psychologist, sex therapist, and historian of erotica would have assisted the trier of fact in determining what types of potential value **could exist** for the challenge works, and then leave it to the jury to determine whether those works had such value.

Of particular note here was the availability of Dr. Ley to provide comparable materials found not to be obscene, e.g., de Sade's *120 Days of Sodom*, the novel *Lolita* by Vladimir Nabokov, and several historical and current erotic drawings, which were submitted to the Court via an offer of proof and placed under seal given their sensitive nature.[67] Had Dr. Ley been able to lay the predicate for and introduce these exhibits before the jury, the jury would have had more societal context than the five stories and three drawings standing alone.

There is no doubt that reading the stories and viewing the drawings is shocking; these are not the stuff of watercooler discussions or coffee table reading. They are extreme; but extremity is not obscenity. Without the jury being aware of the various other challenged materials which have been found not to obscene—

---

[67] ROA.13; see also Doc. 111 of the district court's record, under seal to this Court.

though challenged as such—such as D.H. Lawrence's *Lady Chatterly's Lover*[68] or Henry Miller's *Tropic of Cancer*[69]—the jury could not have made an **objective** determination, limited as they were to their own common sense and background knowledge as to whether these works appeared **to them** to be valuable or to possess the requisite *Miller* value.

Therefore, the trial court was wrong to exclude Dr. Ley as an expert witness, and the reasoning given by the district court, both on the record at the hearing and in its later written ruling, do not comport with the *Daubert* standard but focus instead on the district court's incredulity that one could find value in what the district court considered shocking and disgusting, "the depiction of the sexual abuse of babies and/or children."[70] As well-taken as the district court's moral outrage may be, this is not the appropriate legal standard. It improperly focuses on the conclusions generated, not the methodology or the general acceptance of such methodology in the scientific community. The district court's decision is

--------

[68] *See Commonwealth v. Delacey*, 171 N.E. 455 (Mass. 1930).

[69] *See Besig v. United States*, 208 F.2d 142 (9th Cir. 1953).

[70] ROA.605.

manifestly erroneous given the history of the *Daubert* standard, the testimony sought from Dr. Ley, and his eminent qualifications to discuss these matters with the jury. Reversal is required.

# ISSUE THREE

## ISSUE THREE:   As-Applied Challenge to Counts I, VIII, and IX

In an as-applied challenge, the issue is whether a specific course of conduct constitutes obscenity.[71] For an as-applied challenge under the First Amendment, this Court reviews the challenged action under a strict scrutiny test.[72] Here, Mr. Arthur brought an as-applied challenge to his conviction under Counts I, VIII, and IX, the counts relating to the drawings, arguing that 18 U.S.C. § 1466A(a)(1) is unconstitutional as-applied to Mr. Arthur.[73]

## STATEMENT OF FACTS REGARDING ISSUE THREE

In his post-verdict motion for acquittal, Mr. Arthur made an as-applied challenge to the constitutionality of his conviction for distributing the three challenged drawings in Counts I, VIII, and IX.[74] Specifically, Mr. Arthur argued that the government failed to prove that the subjects depicted in these drawings

---

[71] *See United States v. Playboy Entertainment Group*, 529 U.S. 803, 834 n.3 (2000) (Scalia, J., dissenting).

[72] *See id. at 813.*

[73] ROA.581.

[74] ROA.581-82.

were, or appeared to be minors.[75] An as-applied challenge is appropriate in a post-verdict motion for acquittal.[76] Because facially constitutional statutes like the one at issue here have a plainly legitimate sweep, litigants wishing to challenge the constitutionality of their prosecution must wait until after enforcement is sought.[77] But the underlying standard is not distinct between an as-applied or facial challenge.[78]

## ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE THREE

### 3. The depictions at issue do not depict real people, let alone "minors."

It is not required that the depiction at issue depict a "real" minor.[79] But how does one define whether a wholly fictional cartoon character is a "minor?"[80] While the statute may not be unconstitutionally vague in its construction, it can still be

---

[75] ROA.587.

[76] *United States v. Hicks*, 980 F.2d 963, 969-70 (5th Cir. 1992).

[77] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008).

[78] *See Citizens United v. Federal Election Com'n*, 558 U.S. 310, 335-36 (2010).

[79] *United States v. Whorley*, 550 F.3d 326, 335-36 (4th Cir. 2008).

[80] *See United States v. Handley*, 564 F.Supp.2d 996, 1000-01 (S.D. Iowa 2008).

unconstitutional as applied to a particular defendant if there is no proof that the subject work actually depicts a minor. In *Whorley*, for example, the defendant never actually challenged that the images depicted minors; he only challenged whether they were obscene.[81] While it is uncontroversial that such depictions, like all visual depictions, **might** be obscene, the particular question in this case is whether the work depicts a minor in an obscene manner. The indictment in this case charged Mr. Arthur with violating 18 U.S.C. § 1466A(a)(1), which by its plain language must "depict[] a minor engaging in sexually explicit conduct" and such depiction bust be "obscene." Thus, like 18 U.S.C. § 1462, this statute must import the constitutional definition of obscenity from *Miller*.

In the case of *United States v. Schales*,[82] the defendant possessed images that included a "morphed" photograph of a "local minor girl with obscene pictures of a seven-year-old North Carolina girl."[83] These photographs were taken of actual minor children, and although they had been digitally manipulated so that the

---

[81] *Whorley*, 550 F.3d at 336-37.

[82] 546 F.3d 965 (9th Cir. 2008).

[83] *Id.* at 974.

composite image was unrecognizable as a particular child, the detective in the case was still able to testify that a portion of the images were from a known series of child pornography images.[84] Likewise, in *United States v. Bowersox*,[85] the defendant soldier did not contest that the pictures at issue depicted minors, only that the minors in the drawings were not "real."[86] The Armed Forces Appellate Court held that 18 U.S.C. § 1466A(a)(1) did not require the depiction of a real minor.[87]

### 3.1.    18 U.S.C. § 1466A does require depiction of "a minor."

But the statute **does** require depiction of **a** minor. For example, in *United States v. Eychaner*,[88] the district court found it sufficient to prove that an image depicted a minor based on the "character's youthful looks, her hairstyle, and the relative size of the female character's mouth in relation to the male's penis." While the opinion of the Eastern District of Virginia district court obviously does not

---

[84] *Id.* at 975.

[85] 72 M.J. 71, 74-75 (Armed Forces App. 2013).

[86] *Id.* at 74.

[87] *Id.*

[88] 326 F.Supp.3d 76, 89-90 (E.D. VA 2018).

contain a copy of the image at issue, the description makes it sound similar to the image at issue in Count VIII of this case. However, while Mr. Arthur acknowledges that the jury **could have** found him guilty based on these factors, the question he now advances to this Court is whether, constitutionally, a conviction will stand when based on such factors, the difference between making a sufficiency argument and an as-applied challenge to the statute.

**3.2.**   **Criminalizing depictions of fictitious characters of indeterminate age sweeps too broadly and acts as an end-run around the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*. Obscenity laws are not a catch-all now that prosecutors are prohibited from bringing virtual child pornography charges.**

To the extent that 18 U.S.C. § 1466A(a)(1) purports to criminalize speech, that speech must be obscene. It is uncontroversial that obscene speech may be constitutionally forbidden; obviously not all visual depictions of minors engaging in sexually explicit conduct may be forbidden; if so, every video store in America which sells a copy of *Lolita* or *American Beauty* has engaged in selling obscenity to an unwitting public who naively believes these classic, award-winning films are safe to view. It was incumbent upon the government to produce some evidence indicating that the subjects depicted in the challenged images were in fact minors, and that there was no social artistic value in the works. Had the district court not

excluded Dr. Ley's testimony, Dr. Ley would have been able to testify about the comparable exhibits (also excluded by the Court but made a part of the record by offer of proof).[89]

Justice Gregory, in his concurrence in *Whorley*, takes a different approach to the interpretation of 18 U.S.C. § 1466A(a)(1). He writes that he interprets "subsection (a)(1) to only criminalize material, including cartoons and drawings, that incorporates actual children, even if those children cannot be conclusively identified."[90] Even if the other cases such as *Eychaner* and *Bowersox*, *supra*, found that Japanese-style drawings (very much like those at issue in this case) can be obscene when they depict wholly-fictional minors, Justice Gregory's interpretation deserves consideration by this Court. The reason for this is that his textual argument is persuasive; the statute uses the term "persons" when talking about "persons of the same or opposite sex." "Person," Justice Gregory opines, must mean an actual human being with legal rights and duties.[91] Further, Justice Gregory

---

[89] See Doc. 111 of the record, under seal to this Court.

[90] *Whorley*, 550 F3d at 352 (Gregory, J. concurring).

[91] *Whorley*, 550 F.3d at 351 (Gregory, J., concurring).

writes that the condition imposed in 18 U.S.C. § 1466A(c), that the government need not prove that the minor depicted actually exists, is to alleviate the burden on prosecutors to prove the identity of the minor depicted, not to steer around the constitutional stumbling block imposed by the First Amendment against criminalizing fictional depictions of minors engaged in sexual contact with adults.[92] Finally, Justice Gregory states that the distinction between subsections (a)(1) and (a)(2) exists because (a)(1), with a less-onerous standard of what must be proven in order to make the image illegal, has the less-onerous standard because it has the additional burden of proving that "the conduct involves the abuse of real minors."[93] Justice Stuckey, writing in dissent in *Bowersox*, expressed similar concerns: "Where there is tension between a constitutional right and a statute, the constitution trumps."[94] Justice Stucky wrote that the provision that the depiction need not be of an extant minor could not save it from constitutional infirmity; while he "may not agree with [Bowersox's] choice of reading material," Bowersox was

---

[92] *Id.*

[93] *Whorley,* 550 F.3d at 352 (Gregory, J., concurring).

[94] *Bowersox*, 72 M.J. at 80 (Stuckey, J., dissenting).

nevertheless "charged only with constitutionally protected conduct."[95]

These justices, writing in dissent and concurrence, express the same concern advanced by Mr. Arthur in this case: where and how can the line be drawn such that the plainly legitimate sweep of the statutes at issue does not catch within that sweep protected expression? This Court should err to the side of protecting individual liberty under the Constitution, reverse the convictions Mr. Arthur of the charges in Counts I, VIII, and IX, and render a judgment of acquittal as to those Counts.

---

[95] *Id.*

## ISSUE FOUR

**ISSUE FOUR:**     As-Applied Challenge to Counts II, III, IV, V, and VI

The standard of review for Issue Four is the same as for Issue Three.

## STATEMENT OF FACTS REGARDING ISSUE FOUR

As with Issue Three, Mr. Arthur brought a post-verdict motion for acquittal on Counts II through VI (the text-only counts) on the basis that, as-applied to him, 18 U.S.C. § 1462(a) was unconstitutional since the stories at issue did not actually constitute obscenity under the appropriate law.[96] The same standards for a post-conviction as-applied challenge apply to Issue Four as applied in Issue Three.

## ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE FOUR

**4. The history of the prosecution of text-only obscenity is long and trends toward permissiveness rather than puritanism.**

With regard to text-only obscenity, the prosecution for such has a notable history. The first formal test for text-only obscenity arose from an English case, *The Queen v. Hicklin.*[97] In this Victorian antique, the Queen's court pronounced the

---

[96] ROA.581.

[97] 3 L.R.-Q.B. 360 (1868).

following test: "whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall."[98]

It was not until *United States v. Bennett*, however, that the United States imported the *Hicklin* test.[99] Around the turn of the century, however, no less an esteemed justice than Learned Hand stated his reservation to the prosecution for text-only obscenity:

> I question whether in the end men will regard that as obscene which is honestly relevant to the adequate expression of innocent ideas, and whether they will not believe that truth and beauty are too precious to society at large to be mutilated in the interests of those most likely to pervert them to base uses. Indeed, it hardly seems likely that we are even to-day so lukewarm in our interest in letters or serious discussion as to be content to reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few, or that shame will for long prevent us from adequate portrayal of some of the most serious and beautiful sides of human nature.[100]

Between 1870 and 1930, the clash between American puritanism and erotic fiction reached a fever pitch.[101] Challenged works included Tolstoy's *The Kreutzer*

---

[98] *Hicklin*, 3 L.R.-Q.B. 360 at 371.

[99] 24 F.Cas. 1093 (C.C.S.D.N.Y. 1879).

[100] *United States v. Kennerly*, 209 F. 119, 120-21 (S.D.N.Y. 1913).

[101] Frederick Schauer, *The Law of Obscenity* 13 (1976)

*Sonata*; James's *Tom Jones*; Boccaccio's *Decameron*; Rabelais' *Gargantua and Pantagruel*; Ovid's *Art of Love*; Voltaire's *La Pucelle*; Gautier's *Mademoiselle de Maupin*; Lewis's "Cantleman's Spring-Mate;" Dresier's *An American Tragedy*; D.H. Lawrence's *Lady Chatterly's Lover*; Joyce's *Ulysses*; and Miller's *Tropic of Cancer*. The fact that these works now find inclusion on libraries, bookshelves, and in college classes across the nation shows the growth, through the 20th century, of the realization that works which might otherwise scandalize or offend can contain within them serious artistic and literary value.

In 1973, the United States Supreme Court modernized obscenity jurisprudence by setting forth the famous, three-pronged *Miller* test: (1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to a prurient interest in sex; (2) whether the average person, applying contemporary community standards, would find that the work depicts or describes sexual conduct in a patently offensive way; and (3) does the work, judged from an objective standpoint, lack serious artistic, literary,

scientific, or political value?[102]

### 4.1. There are qualitative differences between writing about an offensive or prurient subject and depicting it visually.

The United States Supreme Court has long recognized that there are qualitative differences between recording actual human beings and the creation of fantasy images, whether through depiction or description.[103] Recognizing this, Congress, in drafting 18 U.S.C. § 1462, codified the *Miller* test as a part of the statute.

In the companion case to *Miller*, *Kaplan v. California*,[104] the Court consider a book, "Suite 69," which was described as having "a plain cover and contain[ing] no pictures" that was made up "entirely of repetitive descriptions of physical sexual conduct, 'clinically' explicit and offensive to the point of being nauseous" with "only the most tenuous 'plot'."[105] The Court noted that there is no

---

[102] *Miller*, 413 U.S. at 24-25.

[103] *Ashcroft v. Free Speech Coalition*; *United States v. Williams*, 444 F.3d 1286 (11th Cir. 2006) (striking down a provision of the PROTECT Act).

[104] 413 U.S. 115 (1973)

[105] *Id*. at 116-17

distinction between the medium of expression in the determination of obscenity.[106]

Nevertheless, each medium presents its own peculiar problems.[107] For example, in

*Stanley v. Georgia*,[108] the United States Supreme Court held that the government

could not forbid the possession of obscene matter within the privacy of one's

home.[109] The Court found that one's home library should be free from state

inquiry.[110]

In *United States v. Whorley*,[111] the Fourth Circuit wrestled with a case that is

in many ways similar to the one at bar. In that case, the defendant engaged in a

series of emails described as "engaging in fantasies on the internet of one person

talking about their fantasy, and another asking questions about what they've done,

---

[106] *Id.* at 119.

[107] *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 503 (1952).

[108] 394 U.S. 557 (1969)

[109] *Id.* at 568.

[110] *Id.* at 565.

[111] 550 F.3d 326 (4th Cir. 2008)

what they haven't done."[112] Justice Gregory noted that such adult/child sexual interactions feature frequently in literature, from the writings of psychoanalyst Sigmund Freud to the literary works of Alice Walker (*The Color Purple*), William Faulkner (*Absalom, Absalom!*), Vladimir Nabokov (*Lolita*) and in popular films (again, *Lolita* and 1999's award-winning *American Beauty*). Justice Gregory notes that "the iconic books and movies above render unsustainable the claim that the writings describing sexual acts between children and adults, generated by fantasy, have no demonstrated socially redeeming artistic value."[113] In doing so, Justice Gregory argued, the Government criminalizes "the mere communication of ideas."[114]

### 4.2. The determination of obscenity is not one of relative quality; to permit some depictions of child sexual abuse as celebrated literature but to penalize and imprison others such as Mr. Arthur for them is inconsistent and flies in the face of due process and equal justice.

There is no doubt that the five indicted stories and the additional stories

---

[112] *Id.* at 348 (Gregory, J., concurring).

[113] *Id.* at 349 (Gregory, J., concurring).

[114] *Id.* at 350.

listed in the special interrogatory to Count VII are of **lesser** literary quality than *Lolita* or *Tropic of Cancer*. No one argues that Mr. Arthur, and Mr. Whorley like him, possessed the strengths as a writer possessed by a Nabokov or D.H. Lawrence. But the question of constitutionality no more turns on the relative skill of the craftsman than it does whether the words are printed or electronic. All ideas, even those that are unorthodox, controversial, or hateful, have the full protection of the guaranties of the Constitution.[115] In order to have validly rejected this, the jury must have found beyond a reasonable doubt that there could be serious literary value in the challenged stories. As Justice Gregory noted, the only argument that such stories do not possess literary value, that they might "whet[] the appetites of pedophiles and encourage[] them to engage in illegal conduct" was rejected by the Supreme Court.[116]

Therefore, this Court should find that the text-only stories do not constitute obscenity within the meaning if 18 U.S.C. § 1462 because it cannot be proven that they lack serious artistic or literary value as written works. In order to make such a

---

[115] *Roth v. United States*, 354 U.S. 476, 484 (1957).

[116] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002).

claim, the government would have, indeed **should** have to, prove the distinction between famous works of art which depict adult/child sexual conduct and the challenged stories, and such a distinction would have to rest on more than "some types of those stories are better than others." Otherwise, the rationale for holding that the statute is constitutional as-applied to the case at bar turns on an entirely subjective judgment about the quality of the work, and not some essential feature or property of the challenged works. This Court should find that 18 U.S.C. § 1466A(a)(1) is unconstitutional as applied to Mr. Arthur in Counts II, III, IV, V, and VI, and reverse and render a judgment of acquittal.

## ISSUE FIVE

**ISSUE FIVE:**    CHARGE ERROR

A district court's jury charge instructions are subject to an abuse of discretion standard of review.[117] Although this discretion is broad, the jury must nevertheless be instructed fully and correctly on the applicable law of the case.[118]

## STATEMENT OF FACTS REGARDING ISSUE FIVE

Mr. Arthur requested two proposed changes to the district court's jury instructions that were denied.[119] Specifically, Mr. Arthur requested that the district court change the wording from "An item may have serious value in one or more of these areas even if it portrays sexually oriented conduct" to "An item may have serious value in one or more of these areas even if it portrays sexually oriented conduct in a patently offensive manner and appeals predominately to the prurient interest."[120]

---

[117] *Waco International Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 528 (5th Cir. 2002).

[118] *See EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 (5th Cir. 1994).

[119] ROA.460-61; ROA.1321-22.

[120] ROA.460.

Further, Mr. Arthur requested that the instruction which stated that "it is for [the jury] to say whether the material has such value" to "it is for [the jury] to say whether the material <u>lacks</u> such value."[121]

In each instance, the trial court denied the requested change on the grounds that the language used was promoted by this Court.[122]

## ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE FIVE

**5. THE PRONGS OF THE *MILLER* TEST ARE DISTINCT; SO TOO MUST THE JURY INSTRUCTIONS APPLYING THAT TEST BE DISTINCT.**

The *Miller* test requires jurors to determine whether the average person would consider that the materials charged appeal predominately to the prurient interest or are, applying contemporary community standards, a patently offensive depiction of sexual conduct.[123] As these issues are distinct, so too must the jury instruction applying them be distinct.

-------------------------

[121] ROA.461.

[122] ROA.1321-22.

[123] *See Jenkins v. Georgia,* 418 U.S. 153 (1974).

**5.1.  The first requested instruction separates the first and second prongs of the *Miller* test and avoids confusion.**

In his first requested jury instruction, Mr. Arthur requested that the district court modify the language to include the phrase "in a patently offensive manner and appeals predominately to the prurient interest" to emphasize that each element of the offense as defined by the *Miller* test is distinct.[124] The district court denied this request because it was a modification of "the Fifth Circuit language," though the district court did not elaborate on where this language was derived.[125]

The language appears on page 18 of the court's charge.[126] In context, it is referring to the first two prongs of the *Miller* test. There is a real danger that the language used causes the jury to conflate the first two prongs as essentially one inquiry. The language requested by Mr. Arthur would clarify this inquiry.

---

[124] ROA.460.

[125] ROA.1321.

[126] ROA.535.

**5.2.    The second requested instruction is necessary because the wording used by the district court constitutes impermissible burden-shifting to the defendant.**

In a similar vein, the next sentence informs the jury that it is for them to say whether the material "has" such value.[127] Mr. Arthur argued that this was an impermissible burden-shift in the language, and that it should read that the jury must find that the material in question **lacks** such value.[128] Language which shifts the burden to the defendant from the government is unconstitutional.[129] General instructions regarding the government's burden are rhetorically inconsistent with a conclusive or burden-shifting presumption.[130] There is nothing in the immediate context of page 18 of the charge that indicates that the third prong of the *Miller* test rests on the government to prove the lack of value. If indeed, as the district court suggested, this is the language promulgated by this Court, it must be reformed. Nothing in the context of the paragraph in which the phrase appears indicates that the government has the burden of disproving the existence of such value; read as it

---

[127] ROA.535.

[128] ROA.461.

[129] *See Francis v. Franklin*, 471 U.S. 307, 318-19 (1985).

[130] *See Sandstrom v. Montana*, 442 U.S. 510, 518-19, n.7 (1979).

is, the jury instructions give the impression that the work starts at a point of neutrality and may either be shown to have value or shown to lack value by the evidence.

But this is not the case; speech is presumed to be protected by the First Amendment until it is shown to fall into one of the historically-unprotected categories of expression.[131] The only jury instruction that would make sense in this context is the one requested by Mr. Arthur – the government must show that the challenged material **lacks** such value. Otherwise, the burden is shifted, and the instruction is unconstitutional, requiring reversal.

---

[131] *See United States v. Stevens*, 559 U.S. 460, 472 (2010).

# ISSUE SIX

**ISSUE SIX:**          Sᴇɴᴛᴇɴᴄɪɴɢ Eʀʀᴏʀ

Appellate courts play an important role in the process of determining an appropriate sentence.[132] Although a deferential abuse-of-discretion standard is applied to the case,[133] the inquiry encompasses two parts: procedural and substantive.[134] A reviewing court sets aside a district court's substantive weighing of the appropriate Sec. 3553 factors only when the trial court's decision "cannot be located within the range of permissible decisions."[135] However, there are procedural requirements the sentencing court must follow; a sentencing court commits procedural error when it does not consider the Sec. 3553(a) factors or rests its sentence on a clearly erroneous finding of fact.[136]

---

[132] *See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

[133] *See Gall v. United States*, 552 U.S. 38, 40-41 (2007).

[134] *Cavera*, 550 F.3d at 189.

[135] *See United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007).

[136] *Gall*, 552 U.S. at 50-51.

## STATEMENT OF FACTS REGARDING ISSUE SIX

Beginning with paragraph 64 of the original pre-sentence investigation report and continuing until paragraph 76,[137] the government discussed a number of interviews with unnamed persons who supposedly provided information not part of "relevant conduct" but that nevertheless impugned the character of Mr. Arthur, calling him a "pervert motherfucker"[138] and accusing him on engaging in violence against women.[139]

Mr. Arthur objected that each of these "interviews" were added to the PSR without corroboration or other indicia of reliability. Mr. Arthur argued that none of the allegations were true and that he lacked the ability to cross-examine or confront his accusers.[140] Mr. Arthur noted, and the government agreed, that this did not meet the definition of "relevant conduct" under the appropriate section of the

---

[137] ROA.1463-65.

[138] ROA.1463, paragraph 65.

[139] Id., paragraph 67.

[140] ROA.1487.

Guidelines manual.[141] Further, Mr. Arthur objected to the original paragraphs 129

through 133,[142] renumbered at paragraphs 130 through 135, on the basis that the

unnamed accusers and others were named as "victims" in an attempt to convert

the victimless crimes of 18 U.S.C. § 1462 and 18 U.S.C. § 1466A into crimes with

victims to enhance the applicability of certain 18 U.S.C. § 3553(a) factors for the

district court to consider in affixing sentence.[143]

Mr. Arthur's counsel repeated these arguments before the district court at

the sentencing hearing.[144] The government's response was merely that the

inclusion of these matters did not affect the Guidelines calculation, but merely to

give the district court a "full view of the community that this Defendant created for

purposes of the proliferation of this type of obscene material through the

administration of this website."[145] The government specifically emphasized how

---

[141] *See* U.S.S.G. § 1B1.3.

[142] ROA.1491.

[143] ROA.1478.

[144] ROA.1423-24.

[145] ROA.1426-27.

these are all appropriate 3553(a) considerations.[146]

The district court, in considering 18 U.S.C. § 3553(a), affixed a lengthy sentence by running that several of the counts, notably Counts I, II, III, IV, V, and VI, run consecutively to each other.[147] Nothing compelled such a result; this was the trial court's decision alone.

## ARGUMENT AND AUTHORITIES IN SUPPORT OF ISSUE SIX

### 6. Sec. 3553(a) is not carte blanche to consider anything placed in the PSR by the government; the district court must find indicia of reliability for every allegation.

The district court's imposition of a sentence is governed by statute.[148] One of the considerations set forth in the statute is the history of the defendant.[149] However, criminal defendants have a right to be sentenced on reliable information.[150] The majority of federal circuits, for example, do not permit an

---

[146] ROA.1427.

[147] ROA.1441.

[148] *See* 18 U.S.C. § 3553(a).

[149] *Id*.

[150] *United States v. Berry*, 553 F.3d 273, 282 (3d Cir. 2009).

enhancement of sentence based on a bare arrest record.[151] This Court has stated that "[b]ald, conclusory statements do not acquire the patina of reliability by mere inclusion in the PSR."[152] However, this Court also requires that a defendant offer "rebuttal evidence demonstrating that those facts are 'materially untrue, inaccurate, or unreliable.'"[153]

### 6.1. The PSR in this case contained numerous examples of extraneous offenses allegedly told to the government by anonymous witnesses describe decades-old conduct which did not result in criminal charges.

In this case, the challenged paragraphs do not refer to any prior arrests. They do not refer to prior charges. They do not even name the accusers. Although the Confrontation Clause does not applying to sentencing proceedings,[154] in order for a defendant to have some hope of rebutting a bald factual assertion in the PSR he must have some idea of who made the assertion, under what circumstances it was made, and how he might go about securing the kind of evidence necessary to rebut

---

[151] *Id.*, collecting cases.

[152] *See United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993).

[153] *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012), *quoting United States v. Huerta*, 182 F.2d 361, 364-65 (5th Cir. 1999) (internal quotation marks and citation omitted).

[154] *See United States v. Underwood*, 194 Fed.Appx. 215, 216 (5th Cir. 2006).

it. To hold otherwise would permit the government to introduce Sec. 3553(a) evidence through no more than the out-of-court hearsay statement of an unknown person to the probation officer, detailing any number of phantasmagoric stories of crime and infamy without giving the defendant any chance of refuting it. This stands the due process position on its head. How is a criminal defendant to show that factual assertions in the PSR are materially untrue, inaccurate, or unreliable except to deny them and point out that they are anonymous accusations from decades in the past that did not result in any criminal charges being filed?

### 6.2. Neither the government nor the district court ever identified what indicia of reliability were present in these wild allegations.

The answer is that the district court, conducting a procedural review, must determine that there is some adequate basis on which to accept the factual recitations, that there are some indicia of reliability that attach to them.[155] And in this case, there are no indicia of reliability pointed to by the government or the district court.[156] Absent some indicia of reliability, it was **procedural**, rather than

---

[155] *See Harris*, 702 F.3d at 231.

[156] ROA.1479-80; ROA.1436-37.

substantive error, for the district court to rely on these matters as Sec. 3553(a) factors in determining sentence.[157] Because of this, the district court's sentence is in error, and this Court should reverse and remand for a new sentencing proceeding, instructing the district court that it must inquire into the reliability of these reports with something more than simply their inclusion in the PSR.

---

[157] *Gall*, 552 U.S. at 50-51.

# CONCLUSION

For the foregoing reasons, the Defendant-Appellant, Thomas Alan Arthur, respectfully prays that this Honorable Court grant the relief requested and issue the appropriate opinions and relief.

Respectfully Submitted,


/s/ Lane Haygood
**LANE A. HAYGOOD**
Texas State Bar Number:  24066670

**BAILEY & GALYEN**
3800 E. 42nd Street, Suite 110
Odessa, TX 79762
Telephone:  (432) 803-5800
Fax:  (432) 225-1062
E-mail:  lhaygood@galyen.com

Attorney for the Defendant,
Thomas Alan Arthur

# CERTIFICATE OF SERVICE

I, Lane A. Haygood hereby certify that one true and correct electronic copy of the foregoing Brief for the Defendant-Appellant was electronically served on lead counsel for the Government, Ms. Ann O'Connell Adams, US Department of Justice, Criminal Division, Appellate Section, through the Court's CM/ECF electronic case filing system, to ann.adams@usdoj.gov, as well as to the other counsel for the Government as listed in the Court's CM/ECF electronic case filing system.

/s/ Lane Haygood
**LANE A. HAYGOOD**
Attorney for Thomas Alan Arthur

Dated: January 13, 2022

# CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a) (7) (B) because this brief contains 9,423 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a) (7) (B) (iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a) (5) and the type style requirements of Fed. R. App. P. 32(a) (6) because this brief has been prepared in a proportionally spaced typeface using Matthew Butterick's Typography for Lawyers font pack, being the serif font of Equity for the body text, the sans serif font of Concourse for subheadings, and the sans serif font of Advocate for headings, in 14-point or greater typeface, except in the case of footnotes, which are sized in 12-point typeface.

/s/ Lane Haygood
**LANE A. HAYGOOD**
Attorney for Thomas Alan Arthur

Dated:  January 13, 2022